## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ARNULFO RAMOS RIOS,

      Plaintiff,

      v.

REX RAMAGE and ONEOK SERVICES
COMPANY, LLC,

      Defendants.

Case No. 19-2602-JWB-ADM

## MEMORANDUM AND ORDER

This matter comes before the court on Non-Party Wesley Medical Center LLC's ("Wesley") Motion to Modify and Quash Defendants' Deposition Subpoena Duces Tecum. (ECF 101.) Wesley asks the court to quash or modify certain document production requests and deposition topics on the grounds that they call for attorney-client privileged or work-product-protected information, confidential business communications, and/or communications with a mediator. As explained below, the court largely denies Wesley's motion because the information appears relevant and Wesley has not supported its objections. However, the court grants the motion as to certain communications with the mediator, to allow Wesley to temporarily withhold privileged or work-product-protected documents by listing them on a privilege log, and to allow Wesley to assert privilege and work-product objections during the deposition.[1]

---

[1] Plaintiff filed a response brief "joining in" Wesley's motion. (ECF 107.) Generally, a request for relief must be made by way of a separate motion and not raised in response to a pending motion. *See Everest Indem. Ins. Co. v. Jake's Fireworks, Inc.*, 335 F.R.D. 330, 336 (D. Kan. 2020) (explaining that a request for relief made in a response brief deprived parties other than the movant of the opportunity to be heard on the motion). This is particularly apt here

## I.       BACKGROUND

This case arises from an auto collision in which Plaintiff Arnulfo Ramos Rios ("Rios") was seriously injured.   (ECF 36.)   Rios alleges that Defendant Rex Ramage ("Ramage") negligently failed to yield the right-of-way at a stop sign, striking the vehicle in which Rios was riding as a passenger.   Rios also alleges that Defendant ONEOK Services Company, LLC ("ONEOK") is liable because Ramage was acting within the course and scope of his employment with ONEOK at the time of the accident.   After the accident, Wesley provided Rios with five weeks of significant medical care.   According to Wesley, Rios incurred charges that he still has not paid in full and Wesley has a hospital lien for the remainder.   (ECF 101, at 2.)   Wesley, Rios, and their counsel have negotiated regarding the amount due.   Wesley also participated in the mediation in this case on July 31, 2020, and separately corresponded with the assigned mediator.

On October 19, 2020, defendants served Wesley with a subpoena to produce documents and appear for a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).   (ECF 101-4, 101-5.)   On October 27, defendants served an amended notice that listed seven document production requests and nearly identical Rule 30(b)(6) topics.   (ECF 101-3.)   Wesley now objects to several of these categories.

## II.      LEGAL STANDARD

A party may issue a deposition subpoena to a corporation under Federal Rules of Civil Procedure 30(b)(6) and 45.   Rule 45 itself does not expressly include a relevance objection as one of the grounds to quash or modify a subpoena, but the scope of discovery for a subpoena is

---

because Rios has not addressed his standing (or lack thereof) to quash or modify the subpoena or to raise many of the objections Wesley asserts.  *See, e.g.*, *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003) (nonrecipient may challenge subpoena only to assert "a personal right or privilege with respect to the subject matter requested in the subpoena").   The court has considered Rios's response brief, but the outcome of Wesley's motion largely turns on Wesley's arguments in support of its own objections.

the same as the scope of discovery generally. *See Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981); *Carter v. Spirit AeroSystems, Inc.*, No. 16-1350-EFM-GEB, 2018 WL 6249991, at *1 (D. Kan. Nov. 29, 2018); *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 386835, at *3 (D. Kan. Jan. 27, 2017).  To that end, Rule 26 defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  In other words, considerations of both relevance and proportionality govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment.  Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies).  In evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).  When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).

III.     **RELEVANCE OF THE INFORMATION SOUGHT**

It appears that the information sought by the subpoena is relevant.  Defendants state that they served the subpoena for four reasons: (1) to ascertain whether Rios was insured when he was a patient at Wesley; (2) to obtain billing and/or hospital lien records to determine the extent to which payment was made for Rios' hospitalization; (3) to determine whether Wesley communicated an amount it would accept in satisfaction of billed charges; and (4) to identify other evidence that would be probative of the amount Wesley would accept in satisfaction.  (ECF 106, at 2.)

Wesley relies on the Kansas Supreme Court's decision on *Martinez v. Milburn Enterprises*, in which the court reached several conclusions about recovering medical expenses under Kansas state law.  233 P.3d 572 (Kan. 2010).  Among other things, the court held that (1) "the charges 'actually made' or billed by the health care provider for plaintiff's medical treatment expenses are not conclusive as to their reasonable value," but, rather, "other evidence shall be admissible,"  and (2) "this other evidence relevant to determining the reasonable value of medical expenses may include write-offs or other acknowledgments that something less than the charged amount has satisfied, or will satisfy, the amount billed."  *Id.* at 222.  Defendants argue the requested information about billing is relevant to the issue of Rios' damages under *Martinez.* The court agrees.  *See Rowan*, 2016 WL 2772210, at *6 (relying on *Martinez* to find documents concerning payment plaintiff received to be relevant).   Because defendants have shown the subpoena seeks relevant information, Wesley bears the burden to support its objections.

IV.     **WESLEY'S HANDLING OF RIOS' ACCOUNT, INCLUDING COLLECTION, PAYMENT & WRITE-OFFS (Request & Subject No. 3)**

This document request and corresponding Rule 30(b)(6) topic seek "[a]ll files, emails, correspondence and records concerning collection, payment, discounts, reduction or write-offs of

the account for services provided to Mr. Ramos Rios[.]"  (ECF 101-3, at 4-5.)  Wesley objects to this category on the basis that it seeks: (1) attorney-client privileged information; (2) attorney work product; and (3) information that is irrelevant because it is not admissible under Kansas statute; and (4) confidential communications with a mediator.

### A.  Attorney-Client Privilege

The Rules of Evidence provide that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  FED. R. EVID. 501; *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998).  In this case, the court has diversity jurisdiction over claims that are governed by Kansas common law.  Therefore, Kansas law applies to the privilege claims at issue.  In Kansas, the attorney-client privilege is codified at KAN. STAT. ANN. § 60-426.  Under the statute, with few exceptions, "communications found by the judge to have been between a lawyer and his or her client in the course of that relationship and in professional confidence, are privileged."  *State v. Gonzalez*, 234 P.3d 1, 10 (Kan. 2010). The term "communication" includes "advice given by the attorney in the course of representing the client and ... disclosures of the client to a representative, associate or employee of the attorney incidental to the professional relationship."  KAN. STAT. ANN. § 60-426(c)(2).  The party asserting attorney-client privilege bears the burden to establish that it applies.  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010); *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 693 (Kan. 2000).  This burden includes showing the privilege has not been waived. *See Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).  Additionally, the Federal Rules require that a subpoenaed party withholding documents or information as privileged or work-product protected must (1) expressly make the claim and (2) "describe the nature of the withheld documents, communications, or tangible things in a manner that, without

revealing information itself privileged or protected, will enable the parties to assess the claim." FED. R. CIV. P. 45(e)(2)(A).

Wesley has not done that here. Wesley asserts a conclusory argument that its representatives "have communicated and corresponded with in-house and external counsel regarding Plaintiff's account. Specifically, those communications were regarding Defendants' Subpoena and Wesley's efforts to protect its Hospital Lien." (ECF 101, at 3.) This brief and blanket statement couches the claim of privilege on the fact that communications with counsel are implicated without describing any of the communications or specific documents at issue. But the fact that an attorney was involved does not automatically make the communication privileged. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010); *State v. Gonzalez*, 290 Kan. 747, 759, 234 P.3d 1, 11 (Kan. 2010) (same). Rather, Rule 45(e)(2)(A) requires the party asserting privilege to provide enough information to enable the court to evaluate the claim. *See In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) ("The party must bear the burden as to specific questions or documents, not by making a blanket claim."); *Texas Brine Co., LLC & Occidental Chem. Corp.*, 879 F.3d 1224, 1229–30 (10th Cir. 2018) ("Without the benefit of a privilege log or inspection of documents, we are left with an insufficient factual record—the exact problem Fed. R. Civ. P. 45(e)(2)(A) aims to prevent.").

Moreover, courts typically will not limit deposition testimony beforehand based on an attorney-client privilege objection unless the topics, on their face, call for testimony invading the privilege. *See, e.g., McBride*, 250 F.R.D. at 587 (characterizing the objections as premature); *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JWL, 2013 WL 3819975, at *4 (D. Kan. July 24, 2013) (characterizing the objections as speculative). This is not the case here, and it would be speculative to modify or prohibit inquiry on the basis that counsel may ask a question that

implicates privileged information.  Rather, the more appropriate approach is for counsel to raise attorney-client privilege objections in response to specific questions that seek protected information.  *See Cotton*, 2013 WL 3819975, at *4; *see also* Fed. R. Civ. P. 30(c)(2) (providing for a privilege objection and noting that counsel may instruct the witness not to answer to preserve the objection).  Counsel may then explore background facts concerning the objection, and the deponent may provide supporting information.  *Id.*

In sum, Wesley's attorney-client privilege objection is overruled on this record, and its motion to quash or modify on this basis is also denied.  That said, Wesley remains free to lodge attorney-client privilege objections in response to specific questions during the deposition, and counsel may instruct the witness not to answer based on such an objection.  *See* FED. R. CIV. P. 30(c)(2).  Wesley may also temporarily withhold responsive documents that it contends are privileged and provide defendants with a privilege log listing the documents.  *See* FED. R. CIV. P. 45(e)(2)(A).  If the parties disagree about the applicability of the privilege and cannot resolve their dispute, they may request a discovery conference with the magistrate judge to discuss the issue and to set an expedited briefing schedule, if motion practice is necessary.

### B.  Work-Product Protection

Wesley's work-product objection suffers from the same deficiencies as its attorney-client privilege objection.  Although Wesley cites the Kansas statute codifying state-law work-product protection, federal law governs application of the work-product doctrine in federal court.  *See Frontier Ref. Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998).  The doctrine was first recognized in *Hickman v. Taylor*, 329 U.S. 495, 509-11 (1947), and was subsequently incorporated into Federal Rule of Civil Procedure 26(b)(3).  That rule provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in

anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  FED. R. CIV. P. 26(b)(3).  The court interprets the doctrine under both *Hickman* and Rule 26(b)(3).  *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006).  Like the attorney-client privilege, the party asserting work-product protection bears the burden to demonstrate that it applies.  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).  In order to establish work-product protection, the party must show that (1) the materials sought are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.  FED. R. CIV. P. 26(b)(3); 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2024 (3d ed. 2019).

Wesley's statement regarding work-product protection is as brief and deficient as its statement regarding attorney-client privilege.  Again, Wesley notes that its representatives and counsel "communicated and corresponded in the course of legal representation and litigation" about Wesley's efforts to protect its hospital lien.  Again, this is a blanket and boilerplate work-product claim that does not even reach a key element—that the material must be prepared in anticipation of litigation.  Therefore, Wesley has not met its burden to establish that work-protect protection attaches to any documents and, again, it has not complied with Rule 45(e)(2)(A) by describing the nature of the withheld materials in a way that enables the parties and the court to assess the claim.  Wesley's work-product objection is overruled on this record.  That said, Wesley may temporarily withhold specific documents it contends are work-product protected and list them on a privilege log, using the process articulated above.

### C. Admissibility of Offers to Compromise as a Measure of Relevance

Wesley also argues the court should modify the subpoena to exclude any communications between counsel for Rios and Wesley concerning their negotiations and offers to settle the hospital lien. In support of this argument, Wesley relies on KAN. STAT. ANN. § 60-452, which makes certain offers to compromise to prove liability for a loss inadmissible. Wesley contends that defendants "gain nothing from discovery of the confidential compromise communications" because the information is inadmissible. (ECF 1010, at 4.) The court construes this argument as a relevance objection.

Because defendants have shown relevance, as discussed above, Wesley bears the burden to support its objection. Wesley's objection is flawed. The applicable evidentiary rule is Federal Rule of Evidence 408, which governs the admissibility of compromise offers and negotiations in *federal court*. Rule 408 does not bar admissibility for every purpose. It bars admissibility "to prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement or a contradiction." FED. R. EVID. 408. It is not apparent at the discovery stage for what purpose defendants may seek to admit this information into evidence, if they do so at all. Regardless, Rule 408 is an admissibility rule that does not dictate the scope of discovery because the Federal Rules of Civil Procedure state that discovery "need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The court will not bar otherwise relevant discovery on the basis. The objection is overruled, and Wesley's motion is denied insofar as the court will not quash or modify the subpoena on this basis.

### D. Confidentiality of Mediator Communications

Wesley next argues that the court should modify Request No. 3 and the corresponding Rule 30(b)(6) topic to exclude confidential communications with the mediator pursuant to KAN.

STAT. ANN. 60-452a(a).  That statute is a Kansas procedural statute that protects from disclosure "information transmitted between any party to a dispute and a neutral person conducting the proceeding."  In response to this argument, defendants contend the statute does not apply because Wesley is not a party to the suit.  Defendants are correct that the statute does not apply, but not for the reason stated by defendants.  This provision appears in the Kansas Code of Civil Procedure, which applies to Kansas state courts, not federal courts.  *Goings v. City of Pittsburg, Kan.*, No. CIV.A. 10-1401-KHV, 2012 WL 602916, at *1 n.4 (D. Kan. Feb. 24, 2012) (addressing a different state procedural rule).

This court's Local Rule 16.3(i) governs confidentiality concerns arising from court-ordered mediation in cases pending before this court.  The rule applies not only to the parties and their counsel, but it also applies to "any other persons involved in the mediation" and it specifically contemplates attendance by interested nonparties.  D. KAN. RULE 16.3(i), (c)(3).  It requires those individuals and parties to keep confidential "the contents of written mediation statements, anything that happened or was said, any position taken, and any view of the merits of the case formed by any participant in connection with any mediation."  *Id.* RULE 16.3(i).  And it further provides that this confidential information is not discoverable unless a court finds disclosure is necessary to: (1) prevent manifest injustice; (2) help establish a violation of law or an ethical violation; (3) prevent harm to the public health and safety that outweighs the interest in keeping the communications confidential.  D. KAN. RULE 16.3(i)(3).

Defendants have not established that any of these three criteria are met.  Accordingly, in accordance with this court's local rules, the court grants Wesley's motion insofar as the court modifies these discovery requests to exclude any statements made in conjunction with or at mediation, including written statements provided to the mediator.

10

## V.   NEGOTIATION CONCERNING HOSPITAL LIEN (Request & Subject No. 6)

The next category of discovery requests seek "[a]ll correspondence or records of correspondence with attorneys for Mr. Ramos Rios or other persons concerning negotiation of Wesley Medical Center's hospital lien in this matter." (ECF 101-3, at 4-5.) Wesley raises two of the same objections to this subject and document request as it did above—namely, that (1) the information is irrelevant because it is not admissible under Kansas statute; and (2) confidential communications with a mediator are protected by Kansas statute. The court summarily overrules the first objection for the same reasons stated above. Defendants have articulated relevance, and discovery need not be admissible to be discoverable. The court sustains the second objection for the same reasons set forth above and grants Wesley's motion insofar as the court modifies these discovery requests to exclude any statements made in conjunction with or at mediation, including written statements provided to the mediator.

## VI.   WESLEY'S POLICIES & PROCEDURES TO DETERMINE BILLED CHARGES & DISCOUNTS (Request & Subject No. 7)

These discovery requests seek "[a]ll documents, policies and procedures in place that are relied upon by Wesley Medical Center to determine billed charges, discounts applied for patients with and without insurance, determining amounts that will be accepted in satisfaction of billed charges, and writing off patient account balances." (ECF 101-3, at 4-5.) Wesley asserts this information is not relevant and that it constitutes confidential proprietary information, the disclosure of which could negatively impact Wesley's ability to collect patient accounts.

### A.   Relevance

Defendants have shown relevance, as discussed above. Wesley therefore bears the burden to support its relevance objection. Wesley makes the conclusory statement that it does not have a written policy that provides a framework to collect Rios' account and that this

11

information is therefore not relevant.  But Wesley's opening brief provided no factual context for this statement and its reply brief provided little more, essentially asking defendants to take Wesley's word that it does not have a policy that applies to Rios, and therefore the policies are not relevant.  In response, defendants explain that Wesley does indeed have policies that provide a framework to collect on accounts for individuals who do not have medical insurance, like Rios, but, because a personal-injury-protection insurance payment apparently covered a portion of Rios' bills, Wesley does not consider Rios to be uninsured.  Defendants explain that they seek the policies to clarify these issues.  The court agrees that they appear relevant and discoverable, and Wesley's disputed assertions that the policies do not apply to Rios are insufficient to support a relevance objection.  The objection is therefore it is overruled, and Wesley's motion is denied insofar as the court will not quash or modify the subpoena on this basis.

### B.      Confidential & Proprietary Documents

Wesley also cites KAN. STAT. ANN. § 60-226(c)(a)(G), the state's civil procedure rule governing protective orders, to argue that information concerning its collection policies are confidential and proprietary and disclosure would cause competitive harm.  Again, the Federal Rules of Civil Procedure govern in federal court.  The Federal Rules provide that the court "may"—but is not required to—quash or modify a subpoena that requires disclosure of "a trade secret or other confidential research, development, or commercial information."  FED. R. CIV. P. 45(d)(3)(B)(i).  However, "there is no absolute privilege for trade secrets and similar confidential information."  *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979). The standards for granting a protective order under Rule 26(c) apply to determine whether to quash a subpoena under Rule 45(d)(3)(B)(i).  *See Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325-26 (10th Cir. 1981).  The nonparty has the burden to show that the

information sought constitutes a trade secret or other confidential information and that its disclosure "will result in a clearly defined and serious injury." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 592 (D. Kan. 2003). A "serious injury" includes competitive harm that results from disclosure. *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *12 (D. Kan. Mar. 24, 2017). To establish such an injury, the nonparty must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.*

Again, Wesley makes only a conclusory statement of competitive harm without making any specific or particular demonstration of fact, which is not enough to support the objection. Even if compliance would require Wesley to disclose some confidential or propriety information, the court "must balance the need for the trade secrets against the claim of injury resulting from disclosure." *Centurion*, 665 F.2d at 325. "[I]f relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Id.* at 326. And as explained above, defendants have shown relevance and need.

A party seeking to quash or modify a subpoena to prevent disclosure entirely faces a heavy burden in contrast to a protective order limiting broad dissemination of confidential information. *See Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 243598, at *6 (D. Kan. Jan. 16, 2020) (noting that some level of disclosure is favored). Here, Wesley's concerns are more appropriately addressed by allowing Wesley to produce documents and designate certain testimony as "confidential" under the protective order already in place in this case. (*See* ECF 24.) Although Wesley contends that the protective order is insufficient because disclosure and dissemination would negatively affect its ability to collect patient

accounts and injure its competitive position in the marketplace, Wesley does not explain how this is the case when the protective order prevents broad dissemination of confidential information. The objection is therefore it is overruled, and Wesley's motion is denied insofar as the court will not quash or modify the subpoena on this basis.

## VII.   CONCLUSION

For the reasons explained above, the court grants in part and denies in part Wesley's motion. The court grants the motion as to Request & Subject Nos. 3 and 6 insofar as the court modifies these categories to exclude any statements made in conjunction with or at mediation, including written statements provided to the mediator. The parties shall confer to find a mutually agreeable time and date to reschedule Wesley's deposition, which must take place no later than December 4, 2020. Wesley may temporarily withhold responsive documents it contends are attorney-client privileged or are attorney work product and list them on a privilege log to be served with the responsive documents.

**IT IS THEREFORE ORDERED** that Non-Party Wesley Medical Center LLC's Motion to Modify and Quash Defendants' Deposition Subpoena Duces Tecum (ECF 101) is granted in part and denied in part as stated above.

**IT IS SO ORDERED.**

Dated November 13, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
