IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ARNULFO RAMOS RIOS,

      Plaintiff,

      v.                        Case No. 2:19-cv-02602-HLT

REX RAMAGE, et al.,

      Defendants.

## MEMORANDUM AND ORDER

This is a negligence case arising out of a vehicle accident. Plaintiff Arnulfo Ramos Rios alleges that Defendant Rex Ramage, the driver of the truck that hit the vehicle Plaintiff was riding in, is liable for negligence, and his employer, Defendant ONEOK Services Company, is liable under a theory of respondeat superior. Defendants move to determine place of trial and for summary judgment as to ONEOK. Docs. 130, 132.[1] Plaintiff moves for partial summary judgment. Doc. 143. For the reasons discussed below, the Court makes the following rulings: Defendants' motion to designate Wichita as the place of trial is granted. ONEOK's motion for summary judgment on Plaintiff's vicarious-liability claim against it is granted because no reasonable jury could conclude that Ramage was acting in the scope of his employment at the time of the accident. Plaintiff's motion for partial summary judgment is granted on the issue of comparing Plaintiff's fault for not wearing a seatbelt but denied as to all other issues.

## I.      BACKGROUND

In keeping with the standard for resolving summary-judgment motions, the following facts are uncontroverted. Additional facts will be discussed below in the context of each motion.

---

[1]  Defendants have also filed four *Daubert* motions, which the Court will address in a separate order.

Ramage is an employee of ONEOK at its Tulsa, Oklahoma headquarters. He works for ONEOK as a director of construction for large projects. At the time of the accident, Ramage was driving a truck provided by ONEOK. Before the accident, he had conducted business in Colby, Hays, and Russell, Kansas.

At approximately 5:20 p.m. on December 21, 2018, Ramage was driving a white 2014 Ford F-250 that collided with a black 1999 Ford F-250 driven by Bryce Sears. The accident occurred at the intersection of 28th Road and Avenue J, which is approximately 1.5 miles east of Little River, Kansas. Sears was westbound on Avenue J and did not have a stop sign. Ramage was northbound on 28th Road and did have a stop sign at the intersection with Avenue J. Plaintiff was a passenger in Sears's truck and suffered injuries in the accident.

Plaintiff asserts that Ramage was negligent in failing to yield at a stop sign. Plaintiff also asserts that ONEOK is vicariously liable for Ramage's conduct because Ramage was acting within the course and scope of his employment at the time of the accident.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation omitted).

2

III.    **ANALYSIS**

A.    **Motion to Determine Place of Trial (Doc. 130)**

As a preliminary matter, the Court considers Defendants' motion to determine place of trial. Plaintiff originally designated Kansas City as the place of trial. Doc. 1 at 9. Defendants now move to designate Wichita as the place of trial. Doc. 130. This is because most of the witnesses reside in or around Little River, Kansas, the Wichita area, or in Oklahoma. None of the disclosed witnesses work or reside within 100 miles of Kansas City. Plaintiff has not responded or otherwise opposed the motion.

Under D. Kan. Rule 40.2, a plaintiff must designate a place of trial, but the Court is not bound by any request. The Court "may determine the place of trial upon motion or in its discretion." D. Kan. Rule 40.2(e). Factors considered are a plaintiff's choice of forum, convenience and availability of witnesses, the possibility of obtaining a fair trial, the court's docket, and any other practical considerations that make trial easy, expeditious, or economical. *Performance Food Group, Inc. v. Ajax Intern. Group LLC*, 2012 WL 5227926, at *1 (D. Kan. 2012). The burden is on the moving party to demonstrate the existing forum's inconvenience. *Id.*

Given these considerations, the Court grants Defendants' motion to designate the place of trial as Wichita. As demonstrated by the motion, Wichita is a more convenient location for most, if not all, of the parties, counsel, and witnesses. Although Plaintiff designated Kansas City, this case has no apparent connection to Kansas City and Plaintiff has not opposed Defendants' motion to move the trial to Wichita. Finally, the Court discerns no other issues that make Wichita an improper forum for trial. Accordingly, Defendants' motion is granted. Trial of this matter will be in Wichita.

**B.      ONEOK's Motion for Summary Judgment (Doc. 132)**

ONEOK moves for summary judgment on grounds that it is not liable for Ramage's negligence, to the extent he was negligent. ONEOK contends there is no disputed question of fact regarding whether Ramage was acting in the course and scope of his employment at the time of the accident, and therefore ONEOK cannot be liable under a theory of respondeat superior.

An employer is generally only liable to injuries caused by its employee if the employee was acting withing the scope of employment. *O'Shea v. Welch*, 350 F.3d 1101, 1103 (10th Cir. 2003). An employee is acting within the scope of his employment when he is performing services for the employer or doing anything that is "reasonably incidental" to employment. *Girard v. Trade Pros., Inc.*, 50 F. Supp. 2d 1050, 1052 (D. Kan. 1999); *see also* Kansas Civil Pattern Instruction 107.06 ("The scope of employment is the complete range of activities an employee is authorized to perform and those an employee might reasonably be expected to perform while carrying out the business of the employer."). Additionally, "an employer is generally not liable for the negligent acts of its employee occurring while the employee is traveling to or from the workplace." *Girard*, 50 F. Supp. 2d at 1052 (citing *Kyle v. Postal Tel.-Cable Co.*, 235 P. 116, 117 (Kan. 1925)). This is sometimes referred to as the "going and coming rule." Ultimately, in the case of a vehicle accident, the question "is whether the employee is acting in furtherance of the employer's business when the collision occurs." *Long v. Houser*, 456 P.3d 549, 553 (Kan. Ct. App. 2020).[2]

ONEOK argues that Ramage was not acting in the scope of his employment because he had finished worked for the day and was on a personal trip when the accident occurred. Although

---

[2]   Plaintiff suggests this rule is not applicable in third-party liability cases. Doc. 155 at 11. The going-and-coming rule originated in workers'-compensation cases. The Kansas Court of Appeals has recently noted that the rule is routinely applied in vicarious-liability cases. *Long*, 456 P.3d at 682; *see also Girard*, 50 F. Supp. 2d at 1053; *Jones v. Blattner Energy, Inc.*, 413 F. Supp. 3d 1114, 1120 (D. Kan. 2019) ("The [going-and-coming] doctrine in Kansas is not limited to cases under the state workers compensation act.").

whether an accident arises out of or occurred in the course of employment is a question of fact, the question can be determined as a matter of law if the evidence points to only one outcome. *Scott v. Hughes*, 275 P.3d 890, 900 (Kan. 2012) (discussing issue in the context of a workers' compensation case).

Here, it is undisputed that Ramage was responsible for the construction phase of the Elk Creek Pipeline, which ran from North Dakota to Oklahoma. His job duties included on-site oversight. Ramage's job duties in late 2018 required him to travel. He had a ONEOK-issued truck and was driving it at the time of the accident. ONEOK paid the expenses and insurance for the truck. The truck had a GPS system and had a Telogis system installed, which monitored certain driving habits such as fast acceleration or hard braking and could provide a report of those events. ONEOK provided driver training and has driving policies and used Telogis reports to identify and discuss certain driving behaviors with employees. Following the accident, Ramage called his supervisor to alert him about the accident. Ramage's supervisor subsequently reinforced safe-driving policies via a conversation with Ramage. Ramage was not issued another ONEOK vehicle after the accident.

On the date of the accident, Ramage was living in Oklahoma and was on his way back to Oklahoma and passing through Kansas.[3] When he came through Kansas in December 2018, he was going to visit his family at a farm near the intersection where the accident occurred. He

---

[3]    Although Plaintiff asserted in the Pretrial Order that Ramage lives in Oklahoma and was on his way back to Oklahoma at the time of the accident, *see* Doc. 127 at 3, he controverts similar statements of fact in ONEOK's motion on grounds that Ramage testified to part-ownership of a farm near where the accident occurred, and that Plaintiff therefore lacks knowledge or information whether Ramage was actually residing at the farm. *See, e.g.*, Doc.155 at 3-4. The Court notes that the testimony immediately preceding the testimony cited by Plaintiff states that Ramage last lived in "the community" in 2013, and he also testified that his home was in Oklahoma. *See* Doc. 155-3 at 19, 32. This deposition was attached to Plaintiff's response, so presumably Plaintiff had access to information about where Ramage lived. Regardless, the cited testimony of Ramage that he had bought into a farm headquartered near where the accident occurred does not create a genuine issue of fact about where Ramage lived, nor can it be squared with Plaintiff's contentions in the Pretrial Order.

previously had meetings in Colby, Hays, and Russell, Kansas. But after his last meeting in Russell, Ramage stopped in Marquette, Kansas, to visit a motorcycle museum and then was going to his parents' home in Little River to spend Christmas with his family. ONEOK did not provide any direction to Ramage about his travel after his last meeting in Russell, and his travel after that meeting was not related to Ramage's work duties or ONEOK's business. Following the last meeting in Russell, Ramage was free to engage in personal travel.

Based on these undisputed facts, it appears that Ramage was not providing any services for ONEOK at the time of the accident and was traveling for personal reasons after he finished his work duties. He was on his second personal trip after finishing work and there are no facts suggesting he was intending to immediately return to work after visiting Little River or do any business there.

Plaintiff makes three arguments to show that a question of fact exists as to whether Ramage was acting within the course of his employment at the time of the accident. First, he argues that an exception to the going-and-coming rule applies because Ramage's job duties entailed travel and because he worked in the oil and gas industry. Second, he contends Ramage's trip served a dual purpose or was only a slight deviation from his business travel. And third, Plaintiff argues Ramage's actions were within ONEOK's control because of the GPS and Telogis systems in the truck. The Court finds that none of these arguments demonstrate a genuine issue of fact on the issue of whether Ramage was acting in the course of his employment.

### 1.       Exceptions to the Going-and-Coming Rule

Plaintiff contends that there are applicable exceptions to the going-and-coming rule, including where travel is an integral part of the job or in the case of oil and gas workers who are often required to travel to remote job sites on a daily basis. Doc. 155 at 14. It is correct that there

is an exception to the going-and-coming rule where travel is an intrinsic part of an employee's job. *See Scott*, 275 P.3d at 899. In other words, while travel to and from home is usually <u>not</u> considered to be within the scope of employment, where travel is an integral part of the job, the opposite is true—going to and coming from home is considered to be within the scope of employment. Here, however, the facts only show that Ramage did have to travel for work, that he had been on a business trip before the accident occurred, and that he oversaw the construction of the Elk Creek Pipeline, which spanned several states. But this does not suggest that travel was an intrinsic part of his job.

Additionally, although oil field workers often fall into an exception of the going-and-coming rule owing to their need to travel to remote work locations, there is no categorical exception to the going-and-coming rule for those workers. *Id.* at 902. And as explained above, there are no facts showing that travel, whether to remote work locations or otherwise, was an intrinsic part of Ramage's job.[4]

### 2.    Dual Purpose or Slight Deviation

Plaintiff alternatively contends that Ramage's trip served a dual purpose and was therefore within the scope of his employment. A dual-purpose trip, which is considered to be within the course of employment, is one that serves both a personal and business purpose such that an employer would have needed someone else to make the trip had it not coincided with the employee's personal journey. *Sumner v. Meier's Ready Mix, Inc.*, 144 P.3d 668, 674 (Kan. 2006). But here, there was no dual purpose in Ramage's visit to Little River. It is undisputed that his last

---

[4]    Even if Ramage's job fell within an exception to the going-and-coming rule, a reasonable jury still could not find that he was acting within the scope of his employment at the time of the accident. Exceptions to the going-and-coming rule simply expand the scope of employment to an employee's commute to and from work. Here, it is undisputed that Ramage was not coming from work—he was coming from the motorcycle museum, which was a personal trip.

business meeting was in Russell, and he was free to engage in personal travel once that was done. There are no facts suggesting that there was any business purpose in Ramage's trip to the family farm in Little River. Nor are there any facts that ONEOK would have needed to send someone else to Little River had Ramage not been going that way. Thus, the dual-purpose rule is not applicable.

Rather, Ramage was on his way to the family farm to spend Christmas with family. Not only is this a wholly personal purpose, but it would represent a substantial deviation from his business trip, to the extent that trip was still ongoing.[5] *See id.* ("Additionally, when an employee takes a clearly identifiable side-trip, thereby deviating from the business route, the employee steps beyond the course of employment and toward his or her personal objective."); *see also O'Shea*, 350 F.3d at 1105 ("A slight deviation might be considered reasonably incidental to employment while a substantial deviation would not.").

Although Plaintiff attempts to draw parallels between this case and *O'Shea*, Doc. 155 at 17, the Court disagrees with the comparison. *O'Shea* involved an Osco store manager who was making a business-related trip when he made a spur-of-the-moment decision to turn into a business on a brief personal errand before returning to work. The accident occurred as he was making the turn. *O'Shea*, 350 F.3d at 1103, 1108. By contrast, although Ramage had not returned to Oklahoma yet, his work had concluded, and he was on his second personal excursion, which would've lasted several days and was of an entirely personal nature and unrelated to his work. *See id.* at 1108 (listing factors to consider in deciding whether a deviation is slight or substantial). Under the undisputed facts, a reasonable jury could only conclude that Ramage's trip to Little River was a substantial deviation and did not serve a dual purpose.

---

[5]   There are no facts regarding any business Ramage was going to engage in after his trip to Little River.

### 3.      Control Over Operation of the Truck

Plaintiff's third argument is that Ramage was acting within the scope of his employment because the Telogis and GPS systems in the truck demonstrate that Ramage was within the control of ONEOK while he was driving the truck. Plaintiff relies on *Thomas v. Johnson Agri-Trucking*. But that case was primarily concerned with whether a truck driver was an employee or independent contractor—something that turned on how much control the trucking company exerted over the driver. 802 F. Supp. 2d 1242, 1250-51 (D. Kan. 2011). But here, it is undisputed that Ramage is a ONEOK employee. ONEOK would obviously have control over him while working. But the undisputed facts show that he was not, in fact, working at the time of the accident.

Plaintiff contends that Ramage was within the control of ONEOK anytime Ramage drove the ONEOK-issued truck because the truck was paid for and insured by ONEOK, and the Telogis system provided feedback about his driving. But Plaintiff cites no authority for the broad proposition that an employee driving a company vehicle is always acting within the scope of employment whenever they are operating that vehicle because it is subject to some degree of control by the employer. Caselaw dictates that something more is needed. *See, e.g.*, *Sumner*, 144 P.3d at 671, 677 (finding that substantial evidence supported conclusion that employee was acting outside the scope of employment where accident occurred in company vehicle but while the worker was on a purely personal errand); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) ("Evidence that Adams had possession of the Goodyear truck with Goodyear tires on board, had a morning delivery to make, was available via pager twenty-four hours a day, and was not restricted from using the truck for personal business fail to support the requirements of respondeat superior.").

Further, although some courts have considered the degree of control exerted over an employee, this has been in the context of describing the worker's <u>actions</u>, not just incidents of the employment relationship. *See, e.g.*, *Girard*, 50 F. Supp. 2d at 1053 (noting that the employer had no control over the worker after he clocked out for the day; that the worker could have traveled home by any route or not gone home at all; that the worker was not on call and could not be ordered back to work before the next day; and that the worker was not acting in furtherance of the employer's business by driving home).

Here, the fact that Ramage was driving a truck issued, paid for, and insured by ONEOK, and which had systems that could provide feedback on Ramage's driving, is not sufficient— standing alone—to demonstrate that he was performing services for his employer or doing anything that is "reasonably incidental" to employment. *See id.* at 1052. Rather, the undisputed facts show that Ramage had finished working for the day, was free to travel any route he wished, was indeed traveling for personal reasons, and was not immediately returning to work. This demonstrates he was not acting within the scope of his employment. "To hold otherwise, would potentially subject every employer in Kansas to liability for its employee's negligence in driving to and from work, would directly contradict the doctrine of respondeat superior as applied in Kansas, and would undermine the sound public policy supporting the going and coming rule." *Id.* at 1053.

Accordingly, the Court finds that there is no genuine issue of fact on the question of whether Ramage was acting within the scope of his employment at the time of the accident. Ramage was on a personal trip and was not performing any services for ONEOK or doing anything reasonably incidental to his employment. Accordingly, ONEOK's motion for summary judgment on Plaintiff's vicarious-liability negligence claim (Doc. 132) is granted.

### C.      Plaintiff's Motion for Partial Summary Judgment (Doc. 143)

Plaintiff moves for partial summary judgment regarding three of Defendants' anticipated defenses. Doc. 143. First, he argues Defendants may not allege comparative fault due to the non-use of a seatbelt. Second, Plaintiff seeks a ruling that Defendants may not assert comparative fault based on Sears drinking before the accident. And third, Plaintiff contends Defendants may not assert comparative fault based on road design or maintenance. In response, Defendants agree that Plaintiff's position on the first issue is consistent with the law of Kansas, and they will therefore not offer any such evidence for purpose of comparing Plaintiff's fault. Doc. 156 at 1. Accordingly, the Court considers the second and third arguments only.

### 1.      Comparative Fault – Intoxication

Plaintiff seeks summary judgment on the issue of whether Defendants can compare the fault of Sears for alleged intoxication and compare the fault of Plaintiff himself for choosing to ride with Sears despite knowing Sears had been drinking. As a preliminary matter, the Court clarifies the standard applied. Plaintiff's arguments occasionally blur the line between a summary judgment and a limine ruling. Plaintiff argues both that there are no facts suggesting that Sears was intoxicated, but also that any arguments that Sears had been drinking would be more prejudicial than probative and not useful to the trier of fact. *See* Doc. 143 at 9-10; Doc. 162 at 17. In his reply, Plaintiff clarifies that he is not seeking any limine ruling and only attacks Defendants' comparative-negligence defense "as completely unsupported by facts in the record." Doc. 162 at 21. Accordingly, the Court considers whether there is any genuine dispute of material fact regarding whether Sears was contributory negligent by drinking, and not whether any such evidence would be unduly prejudicial.

In deciding these arguments, the Court considers the following additional uncontroverted facts. Sears testified at his deposition that he and Plaintiff both had at least one beer before they left work on the evening of the accident. But Plaintiff testified he doesn't recall if he had been drinking. Sears took the beers that had not been drunk and put them in the back seat of his truck before he and Plaintiff got into the truck and left for Plaintiff's house. The drive from where Sears and Plaintiff worked to the intersection took approximately 25 minutes. One beer can was found on the ground near Sears's window. The accident report reflects that Sears smelled of alcohol and had bloodshot eyes.

Sears admitted to first responders that he had been drinking before the accident. Because beer was found at the scene of the accident and because Sears admitted he had been drinking, officers ordered a blood-alcohol test for Sears. After the accident, Sears submitted to a blood test to test for alcohol and various other substances. The blood for the test was collected at 8:15 p.m., approximately three hours after the accident. Under Kansas law, blood samples must be collected within a three-hour window. Each of the substances tested for yielded a "Not Detected" result. Sears's blood-alcohol test result was 0.0. grams per 100 milliliters.

### a.      Sears's Comparative Fault

The first issue is whether Defendants may compare the fault of Sears based on his use of alcohol before the accident. Based on the facts outlined above, the Court finds a disputed question of fact about whether Sears was under the influence of alcohol at the time of the accident. Sears admitted to drinking before the accident, beer was found at the scene, and Sears was observed to have bloodshot eyes and to smell like alcohol. It's true that the blood-alcohol test three hours after the accident showed no alcohol in his system. But owing to the nature of blood alcohol levels over time, there remains a question of fact as to whether alcohol could have played a role in the accident.

*See Porter v. State*, 145 S.W.3d 376, 379 (Ark. 2004) ("In deciding whether there is substantial evidence of intoxication, this court takes notice of the unquestioned laws of nature, mathematics, and physics. . . . Consistent with this principle, this court has repeatedly observed that blood-alcohol content decreases with the passage of time."). Accordingly, summary judgment on this issue is not proper.

Plaintiff argues that the blood-alcohol tests results are conclusive of Sears's <u>non</u>-intoxication, and thus Defendants should not be able to compare his fault. Under Kansas law, it is unlawful for anyone under 21, as Sears apparently was at the time, to operate a vehicle with a blood-alcohol level of .02. *See* K.S.A. § 8-1567a(a). Although not entirely clear, Plaintiff seems to contend that because Sears was not legally intoxicated by the terms of the statute, his fault cannot be compared. The Court disagrees for three reasons.

The Court first notes that the pretrial order states that Defendants contend Sears was negligent or caused or contributed to the accident by, in part, "drinking and driving as a minor." Doc. 127 at 5. It does not allege he was legally intoxicated under Kansas law. Second, as explained above, there is a factual dispute about whether and to what extent Sears was under the influence of alcohol <u>at the time of the accident</u>. Third, Plaintiff has not directed the Court to any authorities that suggests an individual must be legally intoxicated within the definition of the driving-under-the-influence statute for his fault to be compared in a civil action.

In *Ratterree v. Bartlett*, the court excluded evidence that officers smelled alcohol on a driver's breath on grounds that it was more prejudicial than probative, and because it was cumulative of other admitted evidence that the driver had been drinking. 707 P.2d 1063, 1069 (Kan. 1985). But an <u>evidentiary ruling</u> under these circumstances does not support Plaintiff's contention that there is no <u>genuine issue of fact</u> on the question of whether Sears's drinking

contributed to the accident. *See Romine v. Parman*, 831 F.2d 944, 945 (10th Cir. 1987) (finding no error in permitting evidence that a driver had consumed "some beer" on the day of the accident because it was "relevant to the question of [the driver's] reflexes, reaction time, and overall ability to drive the car at the time the accident occurred"). Nor is *Osborne v. Union Labor Life Insurance Co.* helpful to Plaintiff, as that case involved an insurance policy that specifically excluded injuries caused by "being legally intoxicated." 2005 WL 2951430, at *1 (Kan. Ct. App. 2005).

In sum, Defendants seek to compare the fault of Sears for drinking and driving as a minor. There is evidence he was drinking and driving. There is also equally persuasive evidence that he had no alcohol in his system within a few hours of the accident and did not meet the legal definition for intoxication at the time he was tested. Both sides can present their respective evidence and it will be for the jury to decide whether Sears's drinking contributed to the accident.

### b.    Plaintiff's Comparative Fault

Defendants also seek to compare the negligence of Plaintiff for getting into a vehicle with a driver he knew had been drinking. Plaintiff argues he cannot be comparatively negligent for choosing to ride with a driver whose blood-alcohol level was 0.0 following the accident, absent other evidence that choosing to ride with Sears was unsafe. Doc. 143 at 11.[6] But this ignores the evidence outlined above, which suggests Sears was drinking before the accident. Sears also testified that he and Plaintiff were together when he drank at least one beer before the accident. Although Plaintiff testified he cannot remember if he had been drinking or if there was beer in the truck, Sears's testimony is evidence that Plaintiff was aware he was choosing to ride with a driver

---

[6]    In his reply brief, Plaintiff also argues that he cannot be comparatively negligent based on his own drinking. Doc. 162 at 22-23. But it doesn't appear Defendants are arguing this. *See* Doc. 127 at 5 (pretrial order stating that Plaintiff was negligent for various reasons, but not including his own drinking). Rather, Defendants argue Plaintiff is comparatively negligent because he got into a car with a driver he knew had been drinking. *See* Doc. 156 at 24. Plaintiff's drinking is only relevant to show that he knew Sears had been drinking, since they drank beers together.

who had been drinking. "If a passenger has knowledge of danger and the circumstances are such that an ordinary person would speak out or take other positive action to avoid injury to him or herself, then it is the passenger's duty to take the action the ordinary person would take under the circumstances." *Ratterree*, 707 P.2d at 1070.[7] Because there is evidence that Plaintiff knew Sears had been drinking, Plaintiff's motion for summary judgment on this point must be denied.

### 2.    Comparative Fault – Road Design or Maintenance

Plaintiff also seeks summary judgment on whether Defendants can compare the fault of Rice County and Union Township (collectively, the "municipalities") for failing to properly grade the road east of the intersection and for failing to place proper traffic controls at the intersection. Plaintiff makes two arguments on this point. First, he argues that Defendants have not come forward with evidence that any negligence of Rice County or Union Township contributed to the accident. Second, he argues that they have not shown than an exception under the Kansas Tort Claims Act ("KTCA") applies. Doc. 143 at 15. Neither argument is persuasive.

### a.    Evidence that Intersection Contributed to Accident

On the first issue, Defendants point to witness testimony as support for their contention that the municipalities bear some fault for the accident. Specifically, Trooper Farmer noted in the accident report that vehicles coming from the east are difficult to see when stopped at the intersection. He testified that he was aware of previous collisions at the intersection, including one that resulted in a fatality. The fatality accident is what led to the installation of the two stop signs at the intersection, though he could not recall how long ago that occurred.[8] Farmer also told the county attorney that there should be more stop signs at the intersection in discussing this accident.

---

[7]    In response to Plaintiff's motion, Defendants also argue that Plaintiff had a duty to tell Sears to turn his lights on. Plaintiff's motion does not move for any relief on these grounds, and therefore the Court does not reach this issue.

[8]    Plaintiff controverts this statement of fact on grounds that "Farmer actually attests he has no personal, first-hand knowledge of any accident at the Intersection." Doc. 162 at 12. But in the testimony cited, Farmer said he was

Brenda White ("Brenda") witnessed the accident. She was in the car with her children and her husband, Scott White ("Scott"), driving east on Avenue J. Brenda submitted an affidavit stating that the hill to the east of the intersection blocked her view of Sears. Brenda also stated in the affidavit that she knew there would be an accident once she saw Sears crest the hill because there is very little time from when a vehicle crests the hill until it enters the intersection.[9] She also attested that the hill east of the intersection obscures the view of vehicles coming from the west, and that the intersection is dangerous and susceptible to accidents. Brenda tries to avoid it. Scott testified that he agreed with Brenda's account.

Defendants also point to the reports of their experts, Dr. Brian A. Coon and Jay Pfeiffer. Dr. Coon's report states that the hill east of the intersection (where Sears was approaching from) reduces the visibility of oncoming vehicles and contributed to the accident. Pfeiffer's report concludes that it would take approximately six seconds for a vehicle traveling the speed limit to reach the intersection after cresting the hill.

This is all evidence that the intersection itself contributed to the accident, and it is sufficient for Defendants to compare the fault of the municipalities. Plaintiff generally doesn't dispute that this evidence exists. But he complains it is "biased" and contradictory. But that is an issue for cross examination, not summary judgment.

---

"personally aware" of the fatality accident and could also recall a few other accidents or collisions at the intersection. *See* Doc. 156-10 at 6.

[9]   Plaintiff controverts this by pointing to his expert report stating that there are at least ten seconds before a vehicle reaches the intersection. But this only creates a genuine issue of fact on the amount of time it takes a car to enter the intersection after cresting the hill, and not on whether Brenda's affidavit says what it says. Many of Plaintiff's attempts to controvert statements of fact follow a similar pattern. This is important because Plaintiff's motion is based on a <u>lack</u> of evidence. That Plaintiff disputes the evidence relied on by Defendants is not grounds for summary judgment in Plaintiff's favor.

### b.      Liability of Municipalities under KTCA

On the second issue, Plaintiff conflates comparative negligence with the ability to hold a

state entity directly liable under the KTCA. The ability to hold the municipalities directly liable

under the KTCA is not required for comparison of their fault. *Toumberlin v. Haas*, 689 P.2d 808,

814 (Kan. 1984) ("We also find no error in the trial court's instruction to the jury that even though

Franklin County was immune from liability under the KTCA its fault, if any, must be considered

and determined by the jury."); *Wilson v. Probst*, 581 P.2d 380, 384 (Kan. 1978) ("The intent and

purpose of the legislature in adopting K.S.A. 60-258a[10] was to impose individual liability for

damages based on proportionate fault of all parties to the occurrence which gave rise to the injuries

and damages even though one or more parties cannot be joined formally as a litigant or be held

legally responsible for his or her proportionate fault . . . ."). Accordingly, the Court discerns no

requirement that Defendants point to evidence that the municipalities would be subject to liability

(as opposed to immune) under the KTCA.

### 3.      Conclusion on Plaintiff's Partial Motion for Summary Judgment

As stated above, Defendants do not oppose Plaintiff's motion regarding testimony about

Plaintiff's seatbelt use. Accordingly, Plaintiff's motion is granted to the extent Defendants

intended to compare the fault of Plaintiff for not wearing a seatbelt.[11] But Plaintiff's motion is

denied to the extent he seeks summary judgment on the comparative fault of Sears and Plaintiff

based on Sears's use of alcohol, and on the comparative fault of the municipalities based on the

---

[10]   K.S.A. § 60-258a is Kansas's comparative-negligence statute.

[11]   The Court agrees with Defendants that this issue is probably more properly an evidentiary issue than one for summary judgment. Regardless, at trial Defendants are not permitted to compare the fault of Plaintiff based on his failure to wear a seatbelt.

design and maintenance of the intersection. As explained above, questions of fact remain on those issues.

## IV.    CONCLUSION

The Court considered each motion. For the reasons discussed above, the Court grants Defendants' motion to designate Wichita as the place of trial. The Court also grants ONEOK's motion for summary judgment on Plaintiff's vicarious-liability claim against it because no reasonable jury could conclude that Ramage was acting in the scope of his employment at the time of the accident. Lastly, the Court grants Plaintiff's motion for partial summary judgment on the issue of comparing Plaintiff's fault for not wearing a seatbelt but denies it as to all other issues.

THE COURT THEREFORE ORDERS that Defendants' Motion to Designate Wichita as the Place of Trial (Doc. 130) is GRANTED. Trial of this case will take place in Wichita.

THE COURT FURTHER ORDERS that ONEOK's Motion for Summary Judgment (Doc. 132) is GRANTED. Judgment on Plaintiff's vicarious-liability negligence claim is entered in favor of ONEOK. ONEOK is dismissed from the case.

THE COURT FURTHER ORDERS that Plaintiff's Motion for Partial Summary Judgment (Doc. 143) is GRANTED IN PART AND DENIED IN PART. Plaintiff's motion is granted as to the comparative-fault defense based on Plaintiff's seatbelt use. It is denied as to the comparative fault of Sears and Plaintiff based on Sears's alcohol use, and as to the comparative fault of the municipalities.

IT IS SO ORDERED.

Dated: June 3, 2021                    /s/ Holly L. Teeter
                                       HOLLY L. TEETER
                                       UNITED STATES DISTRICT JUDGE